UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JEFFREY WINKE,<br><br>                       Plaintiff,<br><br>v.<br><br>CLEAR CHOICE<br>CONTRACTORS, LLC d/b/a<br>Clear Choice Custom Decks,<br>                       Defendant. | Case No. 24-12743<br>Honorable Shalina D. Kumar<br>Magistrate Judge Anthony P. Patti |

**OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS (ECF NO. 3)**

**I.     Introduction**

Plaintiff Jeffrey Winke ("Winke") sues defendant Clear Choice Contractors, LLC doing business as Clear Choice Custom Decks ("Clear Choice"), his former employer, for breach of contract, promissory estoppel, and breach of implied contract. ECF No.1-1. Clear Choice removed this action to this Court based on diversity subject matter jurisdiction[1] and moves to dismiss Winke's claims. ECF Nos. 1, 3. The motion to dismiss is

---

[1] Clear Choice is a limited liability company whose members all reside in Michigan thereby making it a citizen of Michigan for diversity purposes. Winke resides in Toledo thereby making him a citizen of Ohio.

fully briefed, ECF Nos. 3, 6, 7, and the Court heard oral argument from the parties on July 23, 2025. For the reasons discussed below, the Court dismisses Winke's complaint without prejudice and grants Winke leave to file an amended complaint to cure the deficiencies in his original pleading.

## II.   Factual Background

As alleged in the complaint, Winke was employed as a sales manager at Great Lakes Home Remodeling ("GLHR") from June 2022 until April 2024. ECF No. 1-1, PageID.14, ¶ 4. Winke was earning more than $300,000[2] a year as a GLHR sales manager. *Id*.  In early 2024, a recruiting firm contacted Winke about an open sales manager position at Clear Choice. ECF No. 6, PageID.117; *see* ECF No. 1-1, PageID.14, ¶ 8. According to the counter statement of facts set forth in Winke's response brief, Winke was not seeking to change jobs and the recruiting firm's contact was wholly unsolicited by Winke. ECF No. 6, PageID.117.

After several discussions with the recruiter, Winke interviewed for the Clear Choice sales manager position with the Clear Choice member in charge of hiring, Isaac Hollander ("Hollander"). *Id*.; ECF No. 1-1, PageID.14,

---

[2] Winke's response brief in opposition to Clear Choice's motion indicates his GLHR earnings were more than $200,000 a year. ECF No. 6, PageID.116.

¶ 5. Winke told Hollander that he was not looking to change jobs because he was 67 years old and was satisfied with his income, but he would listen to what Hollander had to offer. ECF No. 6, PageID.117. Hollander insisted that he would make Winke an offer he could not refuse. *Id*. Hollander was eager to hire a successful sales manager like Winke and was not deterred by Winke's reluctance. *Id*.

Nevertheless, Winke refused Clear Choice's initial offer of employment, explaining that he was close to retirement and Clear Choice's offer amounted to a pay cut. *Id*. at PageID.118. Winke likewise refused a second Clear Choice offer because he was virtually guaranteed to make $300,000 at GLHR in 2024 and thus had no incentive to leave. *Id*. Hollander conveyed a third offer, which guaranteed Winke a minimum of $200,000 for the remainder of 2024 and a minimum of $250,000 for 2025. *Id.* These guaranteed minimums, and other benefits Clear Choice would provide to Winke if he agreed to leave GLHR to work for Clear Choice, were reduced to a writing entitled Sales Manager Compensation Package ("Compensation Package"). ECF No. 1-1, PageID.20.

On April 8, 2024, Winke accepted Clear Choice's offer of employment as Sales Manager based on Clear Choices representations made during

negotiations and the terms detailed in the Compensation Package. *Id*. at PageID.14, ¶ 7-8; ECF No. 6, PageID.118. Winke terminated his employment with GLHR and began working for Clear Choice on April 22, 2024. ECF No. 1-1, PageID.14, ¶ ¶ 7, 9; ECF No. 6, PageID.118.

On May 13, 2024, Clear Choice unilaterally changed the terms and conditions of the Compensation Package by significantly reducing Winke's compensation. ECF No. 1-1, PageID.15, ¶ 10. In June 2024, Winke rejected several alternate offers by Clear Choice because they differed in material ways from the guaranteed salary for 2024 and 2025 provided by the Compensation Package. ECF No. 6, PageID.119-20; ECF No. 1-1, PageID.15, ¶ 12. In late June, Clear Choice made Winke a "take it or leave it" revised compensation offer. ECF No. 1-1, PageID.15, ¶ 13. Winke rejected that offer but continued working for Clear Choice. ECF No. 6, PageID.120.

On July 17, 20204 Clear Choice presented Winke with a written employment contract with materially different terms than the Compensation Package under which he was hired. *Id*.; ECF No. 6-1, PageID.141-51. Winke refused to sign that agreement and left his position with Clear Choice on July 19, 2024. ECF No. 1-1, PageID.15, ¶ ¶ 14-15.

Winke thereafter filed this action, alleging that Clear Choice breached its contract with Winke by unilaterally changing the guaranteed minimum compensation provided under the Compensation Package. *Id*. at PageID.15-16, ¶ ¶ 17-19. Winke's complaint also alleges that Clear Choice made an actual, clear, and definite promise to Winke, upon which he reasonably relied to his detriment, and which must be enforced to avoid injustice. *Id*. at PageID.17, ¶ ¶ 23-26.

### III. Analysis

#### A. Standard of Review

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Golf Village N., LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal marks omitted). To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "does not need detailed factual allegations" but must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Courts construe the complaint in the light most favorable

to the plaintiffs and draw all reasonable inferences in their favor. *Golf Village*, 14 F.4th at 617 (citing *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019)).

The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. "[P]lausibility occupies that wide space between possibility and probability." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (internal marks omitted).

Additionally, a motion to dismiss tests the initial legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). To survive a motion to dismiss, the allegations must "do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555-56).

### B. Breach of Contract

Clear Choice argues that, even if the Compensation Package constitutes a viable contract, Winke's breach of contract claim fails as a matter of law because it had authority to unilaterally amend employment terms, including compensation. ECF No. 3, PageID.71-74. Clear Choice relies on *Bullock v. Automobile Club of Michigan* to assert that at-will employment gives an employer the right to amend employment policies. 444 N.W.2d 114, 117 (Mich. 1989).

The parties argue whether the presumption of at-will employment under Michigan law is overcome by the terms of the Compensation Package, or from the parties' discussions and actions. But the Court finds that the parties' arguments and cited authority on the issue of at-will employment are inapposite to Winke's claim that Clear Choice breached a contract by unilaterally reducing his guaranteed minimum compensation under the Compensation Package.

Notwithstanding an employer's right to amend employment policies under at-will employment, "the [Michigan] Supreme Court held that the employer's right to change or amend the policy 'could not encompass denial of a contract right gained through acceptance of an offer.'" *Bodnar v.*

*St. John Providence, Inc.*, 933 N.W.2d 363, 373 (Mich. Ct. App. 2019) (quoting *Cain v. Allen Electric & Equip. Co.*, 78 N.W.2d 296, 302 (Mich. 1956)). Indeed, an employer can "not retroactively modify its policy in order to deny [an employee] a contractual right to which the employee was already entitled." *Id*. Hence, if Winke had a contractual right to the guaranteed minimum compensation under the Compensation Package, Clear Choice's unilateral reduction of Winke's compensation would give rise to an action for breach of contract.

 Did Winke have a contractual right to the guaranteed minimum compensation for 2024 and 2025 under the Compensation Package? Clear Choice argues that Winke could have no contractual rights under the Compensation Package because, lacking either party's signature, that purported contract is void under Michigan's statute of frauds. Undeniably, if a contract is not to be performed within one year from the date made, it is void unless in writing and signed by the party against whom it is to be enforced. M.C.L. 566.132. However, as Winke points out, "the common-law claim of promissory estoppel can bar the application of the statute of frauds." *Crown Tech. Park v. D&N Bank, FSB*, 619 N.W.2d 66, 71 (Mich. Ct. App. 2000); *see also Opdyke Inv. Co. v. Norris Grain Co.*, 320 N.W.2d

836, 840 (Mich. 1982) ("[P]romissory estoppel ha[s] developed to avoid the arbitrary and unjust results required by an overly mechanistic application of the [statute of frauds].").

### C. Promissory Estoppel

> [T]o invoke promissory estoppel, the party relying on it must demonstrate that (1) there was a promise, (2) the promisor reasonably should have expected the promise to cause the promise to act in a definite and substantial manner, (3) the promisee did in fact rely on the promise by acting in accordance with its terms, and (4)[]the promise must be enforced to avoid injustice.

*Crown Tech. Park*, 629 N.W.2d at 71; *see also Cove Creek Condo Ass'n v. Vistal Land & Home Dev., LLC*, 950 N.W.2d 502, 524 (Mich. Ct. App. 2019). "Promissory estoppel requires an actual, clear, and definite promise." *First. Sec. Sav. Bank v. Aitken*, 573 N.W.2d 307, 317 (Mich. Ct. App. 1997), overruled on other grounds by *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28 (Mich. 1999); *see State Bank of Standish v. Curry*, 500 N.W.2d 104, 108 (Mich. 1993). To determine whether a promise could be relied upon, courts "must look to the words and actions surrounding the transaction in question as well as the nature of the relationship between the parties and the circumstances surrounding their actions." *First Sec. Sav. Bank*, 573 N.W.2d at 317 (citing *Standish*, 500 N.W.2d at 108-109).

Likewise, courts rely on the testimony and evidence supplied by the promisee to determine if it did in fact rely upon the issued promise. *See, e.g., Ypsilanti Comm. Utils. Auth. v. Meadwestvaco Air Sys., LLC*, 678 F. Supp. 2d 553, 575 (E.D. Mich. 2009).

Clear Choice again invokes the at-will employment doctrine to avoid Winke's promissory estoppel claim. Clear Choice contends that "where an offer of employment is terminable at will, it 'is insufficient to support a claim of promissory estoppel.'" ECF No. 3, PageID.76 (quoting *People-Peterson v. Henry Ford Health System*, 2011 WL 149990, at *6 (Mich. Ct. App. Jan. 18, 2011)). Significantly, Clear Choice omits the final phrase from the quoted sentence: "An offer of employment that is terminable at will is insufficient to support a claim of promissory estoppel *where the defendant employer terminates the anticipated employment*." *People-Peterson*, 2011 WL 149990, at *6 (emphasis added). Winke's employment was neither anticipated, nor terminated by Clear Choice—Clear Choice reduced Winke's compensation after he began his job and, as acknowledged by Clear Choice's counsel at the hearing, Clear Choice did not terminate Winke's employment. *People-Peterson* is thus inapposite.

Indeed, with one notable exception, Clear Choice's cited authority is generally inapplicable because Winke relies upon promissory estoppel not to circumvent the presumption of at-will employment as necessary to sustain a wrongful termination claim, but rather to challenge the unilateral reduction of his bargained-for compensation.

For example, in *Meerman v. Murco*, the discharged employee plaintiff unsuccessfully raised a promissory estoppel claim to avoid the at-will employment status which permitted her employer to discharge her before she even began the offered and accepted position. 517 N.W.2d 832 (Mich. Ct. App. 1994). The *Meerman* panel of the Michigan Court of Appeals affirmed the lower court's dismissal of the plaintiff's promissory estoppel claim but noted that, if it were not bound to follow precedent set by an earlier panel, it would have reversed the lower court's dismissal of the promissory estoppel claim. *Id*. It reasoned that the employer's actions in specifically seeking out the plaintiff and inducing her to leave her previous employer amounted to "distinguishing features" sufficient to remove the case from the presumption of at-will employment. *Id*. (quoting *Filcek v. Norris-Schmid, Inc.*, 401 N.W.2d 318 (Mich. Ct. App. 1986)).

Like the other cases cited by Clear Choice, *Zyber v. Patsy Lou Buick GMC, Inc.* features a plaintiff's unsuccessful attempt to evade the at-will employment status that permitted his employer to fire him. 2019 WL 3849443 (Mich. Ct. App. Aug. 15, 2019). Yet *Zyber* supports Winke's claim for the guaranteed minimum compensation under the Compensation Package.

The plaintiff salesman in *Zyber* signed a bonus contract titled the "25-year contract." That contract provided for certain monthly and yearly bonuses, and other benefits, including a golf club membership, two free vehicles, health care under the employee benefit package, and other compensation "for as long as employment continues." *Id*. at *1. Although the court was not convinced that the language of the bonus contract constituted a promise to employ the plaintiff for 25 years, it did note that the contract "guaranteed the bonus schedule and fringe benefits as long as plaintiff remained employed or until the contract expired." *Id*. at *6. In other words, the 25-year contract provided the plaintiff with recourse if defendant employer failed to pay him or provide fringe benefits as dictated by its terms. *See id*. Likewise, here, the Compensation Package may not evidence employment of a certain duration, but it explicitly "guarantee[s]

minimum compensation of $200,000 for the remainder of 2024" and "guarantee[s] minimum compensation of $250,000 in 2025." ECF No. 1-1, PageID.20. And, as in *Zyber*, Winke would not be able to rely on the terms of the Compensation Package to create a certain duration of employment, but he could rely on its contained promise for guaranteed minimum compensation in 2024 and 2025.

In summary, promissory estoppel is legally viable both as an independent cause of action and as a means to avoid Clear Choice's statute of frauds defense to Winke's breach of contract claim. Although the sparse facts alleged in Winke's complaint are insufficient to state a plausible claim for promissory estoppel, the detailed counter statement of facts in his response brief supply enough facts to state such a claim. Accordingly, the Court dismisses Winke's breach of contract and promissory estoppel claims but will also afford Winke the opportunity to amend his complaint to incorporate the factual assertions set forth in his response brief.

### D. Breach of Implied Contract

If the intention to form a contract is not explicitly manifested by words of the parties, an implied contract may still exist based upon the conduct of

the parties, language they used, or things done by them or other pertinent circumstances surrounding the transaction. *Temborius v. Slatkin*, 403 N.W.2d 821, 826 (Mich. Ct. App. 1986). Again, the facts as alleged in Winke's complaint do not permit an implied contract claim to survive a motion to dismiss, but the details set forth in his response provide ample facts to state a viable claim for breach of implied contract. The Court likewise dismisses the breach of implied contract claim but, again, grants Winke leave to amend his complaint to cure the deficiencies related to this claim.

## IV.   Conclusion

For the reasons discussed, Winke's complaint is **DISMISSED WITHOUT PREJUDICE** and Clear Choice's motion to dismiss (ECF No. 3) is **TERMINATED**. However, the Court grants Winke leave to amend his complaint to include facts and details recited in his brief in opposition to Clear Choice's motion to dismiss (ECF No. 6). Winke must file his amended complaint by **August 15, 2025** or this case will be closed.

**IT IS SO ORDERED**.

Dated: August 1, 2025

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge